NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0837n.06

No. 10-4156

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NUKEYDA HICKS,

      Plaintiff-Appellant,

v.

SSP AMERICA, INC.,

      Defendant-Appellee.

FILED

*Aug 03, 2012*

LEONARD GREEN, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:      KENNEDY, MARTIN, and STRANCH, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Nukeyda Hicks appeals the district court's grant of summary judgment in favor of SSP America, Inc. on her claims of failure to promote based on race and sex discrimination, and of retaliation, both in violation of Title VII of the Civil Rights Act. We AFFIRM in part and REVERSE in part the district court's grant of summary judgment, and REMAND for further proceedings.

## I.

Hicks is an African-American female who was employed by Creative Host Services, operating under the name SSP America, Inc., and its predecessor entity, Compass Group, from November 2002 until her termination on March 6, 2008.  Hicks began working for Compass as a cashier at its food-service franchises on both sides of the Ohio Turnpike in Mantua, Ohio.  Hicks was promoted to Shift Supervisor, and was later promoted to Assistant Manager in April, 2006.  Around

this time, the Ohio Turnpike restaurant locations began operating under the name Creative Host

Services; in early 2008, the SSP operations began operating under the name SSP America. As an

Assistant Manager, Hicks reported to Anthony David, the General Manager, who reported to Robert

Viox, SSP Senior Director of Operations. Viox had an office in Kentucky.

Prior to her suspension and subsequent termination, Hicks was never disciplined by any

superior during her employment with SSP and its predecessors. In the year before her termination,

she received two merit pay raises and a positive evaluation. According to Hicks, she had told David

she was interested in becoming the General Manager after being told by David that he planned to

leave SSP, and Hicks asserts David had begun training her for the job.

In January 2008, Viox hired Kenneth Barnes to replace David as the General Manager. It

appears that Viox intended to retain David and demote him to Assistant Manager, but David

resigned. Prior to his resignation on March 6, 2008, David helped train Barnes in the General

Manager role.

Hicks filed a discrimination charge with the Equal Employment Opportunity Commission

on February 7, 2008, charging that SSP failed to promote her to General Manager because of her sex

and race. The Commission mailed a copy of the complaint to David at one of the two Ohio Turnpike

addresses for the SSP restaurants where David and Hicks worked.

On February 19, Viox suspended Hicks's employment for violating SSP's cash-handling

policy by allowing other employees to use her Micros card—a swipe card encoded with identifying

employee information and used by individual employees to access the cash register system—to log

in to cash registers in the restaurants. SSP states its cash-handling policy—which prohibits sharing

of Micros access cards—is aimed at preventing fraud and theft. In support of Hicks's suspension, Viox told Hicks that her Micros card had been used to ring up net sales of about $20,000 and to enter three-hundred five "error corrects" at the SSP turnpike restaurants during a two-week period. These amounts were far higher than those of any other employee during the same period. The report tabulating the amount of net sales and error corrects at issue reflects the period from February 4 through February 18. Activity on the Micros card of an employee terminated in 2007 appears on the February 2008 report. Hicks stated in an affidavit that she was on vacation from February 2 to February 12, and that David requested she leave her Micros card with him while she was on vacation for the purpose of allowing other employees to log in to the cash register with her card, which she did.

On February 22, Hicks filed a second charge with the Commission alleging her original race and sex discrimination claims and an additional retaliation claim related to her suspension. On March 6, she was terminated by Viox, for the reason that she had violated SSP's cash-handling policy. Hicks received a Notice of Right to Sue from the Commission on March 25, 2009.

On March 11, Ady Iwano, SSP Director of Human Resources, requested from the Commission a copy of the first set of charges filed by Hicks. Iwano received a copy by fax from the Commission.

Hicks brought suit in Cuyahoga County Court of Common Pleas on June 16, alleging race and sex discrimination in SSP's failure to promote her, in violation of Title VII; retaliation in violation of Title VII; race and sex discrimination in violation of Title VII and Ohio Revised Code Chapter 4112; and an Ohio state law claim of wrongful discharge in violation of public policy. SSP

removed the case to the United States District Court for the Northern District of Ohio on July 15 and thereafter moved for summary judgment. The district court granted SSP's motion for summary judgment on all claims. Hicks appeals the grant of summary judgment on her failure to promote and retaliation claims only.

## II.

"We review a district court's grant of summary judgment *de novo*." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012). Summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.

"In order to establish a Title VII employment discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Hicks puts forth two claims under Title VII: first, that SSP unlawfully discriminated against her based on her race or sex in failing to promote her; and second, that it suspended and then terminated her in retaliation for filing a discrimination claim with the Commission.

## A. Failure to Promote

Hicks has not offered direct evidence of discrimination in her failure to promote claim, but attempts to establish her case through circumstantial evidence. In *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 240 (6th Cir. 2005), we described the elements of a prima facie case of failure to promote:

> In a failure to promote employment discrimination case, the Sixth Circuit has modified the elements of the [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] test to fit the specific context. Under *Nguyen* [*v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)], which is the governing precedent, a plaintiff with a discrimination claim based on a failure to promote must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

The analysis is the same for both race and sex discrimination in the context of failure to promote. *Compare id.* (describing the elements of a prima facie case of failure to promote based on sex discrimination) *with Nguyen*, 229 F.3d at 562-63 (describing the same four elements in analyzing a prima facie case of failure to promote based on race discrimination).

Even assuming Hicks has satisfied the first three prongs, she has not satisfied the fourth. When Barnes, a white male, was hired for the General Manager position, he had fifteen years of restaurant experience, twelve of which were managerial, and a culinary degree. Hicks, in contrast, had just under two years of managerial experience and no culinary degree. Thus, she has not proved that she possessed "similar qualifications" to Barnes. *See White*, 429 F.3d at 242 ("[T]o satisfy the fourth prong . . . it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications."). Finally, we note that

"[a]n employer has even greater flexibility [than in choosing non-management-level employees] in choosing a management-level employee, as is the case here, because of the nature of such a position." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987).

Because Hicks has not proven that she possessed similar qualifications to the individual who was hired to the position she sought, Hicks has not met the burden of proving a prima facie case on failure to promote based on race or sex discrimination. We affirm the district court in its dismissal of these claims.

## B. Retaliation

Title VII prohibits an employer from retaliating against an employee who has opposed discriminatory conduct or filed "a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In *Nguyen*, 229 F.3d at 563, we articulated the standard a plaintiff must meet to establish a prima facie retaliation case:

> [A] plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.

The parties agree that the filing of charges with the Commission by Hicks is an activity protected under Title VII, which satisfies the first prong of the prima facie case. The third prong is satisfied because SSP took adverse employment actions against Hicks by suspending and then terminating her after she filed the charges.

The second prong, whether SSP knew Hicks filed the charges, is the primary point of contention between the parties on this claim, and it is the prong on which the district court's opinion rests. Hicks concedes that she has no direct evidence that SSP knew she filed the charges. "But direct evidence of such knowledge or awareness is not required, and . . . a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002).

The parties' dispute revolves around whether the key to the mailbox to which the Commission mailed the notice of filing of charges was lost at the time of filing. SSP asserts that the key was lost around the time that SSP would have received notice of Hicks's charges by mail, and was not replaced until around or after Hicks's termination. Therefore, SSP contends it could not have had knowledge of the charges at the time of Hicks's termination. Hicks admits that she told no one at SSP that she had filed charges with the Commission, but Hicks offers evidence to rebut SSP's assertion that it lacked knowledge of her charges, including: the declaration of the postmaster with jurisdiction over the mailbox in question that he had not replaced the key; David's testimony that the mail was checked frequently and would have been brought to the SSP restaurants by the mail carrier if the box was full; and the fact that the mail volume was such that the mailbox was usually full after one or two days of delivery. Hicks has thus offered evidence sufficient to create a genuine dispute about whether the mailbox was accessed or accessible at the time of the Commission's mailing, from which an inference may be drawn that SSP had knowledge that Hicks filed charges with the Commission.

In an attempt to support its assertion that SSP had no knowledge of the charges, regardless of its arguments about the inaccessibility of the mailbox, SSP has offered a declaration by Viox stating that he had neither seen nor heard of the filing of charges with the Commission when he decided to suspend Hicks, when he decided to terminate her, and when he actually terminated her. SSP also offered a declaration by Iwano stating that, "to the best of [her] knowledge, SSP America never got a copy of the [Commission] charge until [March 11, 2008]."

However, there is also evidence in Hicks's favor supporting a contrary inference: David testified that Barnes told him "'I believe [Hicks] is filing for discrimination'" just before David left his employment with SSP; when asked about the charges, David testified that he "remember[ed] seeing it" (apparently meaning he had seen either the notice-of-charge envelope from the Commission or the charge itself). David resigned on March 6. Hicks was terminated effective March 6. David and Hicks resigned and were terminated, respectively, on the same day; thus, Barnes's alleged statement that "[Hicks] is filing for discrimination" and David's statement that he remembered "seeing it" both predate Hicks's termination. Hicks has produced evidence supporting the inference that Barnes and David knew of the charges prior to her termination date.

Further, "knowledge of a plaintiff's protected activity can be inferred from evidence of the prior interaction of individuals with such knowledge and those taking the adverse employment action." *Mulhall*, 287 F.3d at 553 (citation omitted). Hicks has produced evidence that Viox and Barnes were friends, and that Viox was Barnes's and David's direct superior during the relevant period. This work relationship supports an inference that both Barnes and David would have had ongoing interactions with Viox. When viewed in the light most favorable to Hicks, Barnes's or

David's knowledge of the charges, coupled with Viox's ongoing interactions with Barnes and David during the relevant period, supports an inference that Viox, who made the decision to terminate Hicks, knew of the charges prior to Hicks's termination date. *See id.* Contrary to the district court's ruling, Hicks has satisfied the second prong of her prima facie case.

We next consider the fourth and final prong: whether Hicks has produced evidence sufficient to prove a causal connection between her protected activity and her termination. "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen*, 229 F.3d at 563. Hicks has put forth evidence supporting an inference of causation. This evidence is based primarily upon her past good job performance, the temporal proximity of the date she initially filed charges with the Commission to the dates of her suspension and eventual termination, the increased scrutiny of her Micros card activity after she had filed charges, and the inference of SSP's knowledge that she had filed charges with the Commission, discussed above. Though "evidence that defendant treated the plaintiff differently from similarly situated employees . . . is [also] relevant to causation," *id.*, neither party has presented relevant evidence about "similarly situated employees." Therefore, we evaluate the job performance, temporal proximity, increased scrutiny, and knowledge evidence in our causation analysis, recognizing that "no one factor is dispositive in establishing a causal connection." *Id.*

Hicks has shown that, prior to filing charges with the Commission, she was not disciplined by superiors during her tenure with SSP; was promoted twice; and received two merit pay raises and a positive evaluation in the year before her termination. The record also shows that eleven days

elapsed between the Commission's mailing of its notice of her initial charges to SSP and Hicks's suspension, and four weeks elapsed between the mailing and her termination.

Evidence "that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation," *id.* at 563. While evidence of temporal proximity alone is ordinarily not sufficient to support an inference of causation, "there may be circumstances where evidence of temporal proximity alone would be sufficient to support [such an inference]." *Id.* at 567. We have "accepted temporal proximity as a valid basis from which to draw an inference of retaliatory motivation under limited circumstances . . . . Specifically, the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with 'other evidence of retaliatory conduct to establish causality.'" *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (citations and internal quotation marks omitted). Here, Hicks was suspended eleven days after filing charges with the Commission and there is evidence that she was subject to increased scrutiny with respect to the activity on her Micros card following the filing of charges—the record shows that there is evidence SSP did not ordinarily scrutinize the Micros reports as it did when it used the report to support her suspension and termination. Indeed, activity logs for the Micros card of an employee terminated in 2007 on the February 2008 report supports an inference that the Micros activity records were not ordinarily scrutinized for the infraction forming the articulated basis of Hicks's termination, but that instead it was at least somewhat common for employees to use cards not their own to log in to the Micros system.

We have held that temporal proximity of three months, in combination with increased scrutiny, is sufficient to satisfy the causation prong. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435-

36 (6th Cir. 2009) ("The combination of this increased scrutiny with the temporal proximity of [the plaintiff's] termination occurring less than three months after [the plaintiff's] EEOC filing is sufficient to establish the causal nexus needed to establish a prima facie case."). Here, Hicks has shown even closer temporal proximity than that present in *Hamilton* and increased scrutiny, as in *Hamilton*, in addition to a prior good work record.

Finally, we note that evidence of knowledge may also be probative of causation. *See Harrison v. Metro. Gov't of Nashville & Davidson Cnty.*, 80 F.3d 1107, 1118 (noting that in *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987), we followed an approach which "subsumes the element of employer knowledge into the causal connection analysis") (*overruled on other grounds by Jackson v. Quanex Corp.*, 191 F.3d 647, 667 (6th Cir. 1999)). In total, we hold that the evidence here (that is, a strong and untarnished work record, evidence that supports the inference that Viox knew that Hicks filed charges with the Commission, the increased scrutiny of the activity on her Micros card, and a temporal gap of eleven days between initially filing the charges and suspension), is sufficient to support an inference of causation.

Because Hicks has made her prima facie retaliation case, the burden shifts to SSP to articulate a legitimate, non-discriminatory reason for its adverse employment action. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F. 3d 261, 264 (6th Cir. 2010). SSP has done so by stating and supporting its contention, as described in the facts above, that Hicks was terminated for her violations of SSP's cash-handling policy. *See Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559-60 (6th Cir. 2009) (holding that an employer's stated reason for termination—that the employee had violated company policy—was a legitimate, non-discriminatory reason for termination). The

burden then shifts to Hicks to "show that the employer's explanation was a mere pretext" for retaliation. *Schoonmaker*, 595 F. 3d at 264.

For a plaintiff to show pretext, she must show the employer's given reason for its conduct "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Id.* at 268.

Hicks has offered some evidence casting doubt on SSP's arguments that it consistently followed its own cash-handling policy as a general matter, including evidence that SSP employees had previously used other SSP employees' Micros login cards to operate cash registers on multiple occasions. But, she does not rebut SSP's contention and supporting evidence that the number and gross dollar value of error corrects and the amount of net sales logged on her Micros card were far higher than those of any other employee; she also admitted in her deposition that she violated the cash-handling policy. Thus, Hicks has not shown that SSP's articulated reason for termination had no basis in fact. Hicks also admitted in her deposition that she knew violating the cash-handling policy was a terminable offense, thus showing that SSP had sufficient motivation to terminate her employment. Finally, Hicks does not argue that other employees "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of [Hicks]." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (*abrogated on other grounds by Gross v. FBL Fin Servs. Inc.*, 557 U.S. 167 (2009)).

However, as to whether the cash-handling policy violations actually motivated the challenged conduct or served as pretext for the adverse employment action, Hicks has offered evidence sufficient to support an inference that SSP's reason for termination is pretext. Hicks stated in a

sworn affidavit that she was told by David, her direct superior, "to leave [her] keys and [Micros] card with him so he could let employees use the card" while she went on vacation. SSP does not dispute this statement that supports an inference that SSP management told her to violate the cash-handling policy. Further, she stated in the affidavit that she was on vacation "from February 2 . . . to about February 12." The cash-handling report SSP cites in support of its contention that Hicks lent her card to other employees, as proved by much higher net sales and error corrects, covers the period from February 4 through February 18. However, Hicks was on vacation for more than half of the period the report covers, and, further, left her card with her superior during this time upon his request. Thus, when viewed in light of evidence that other employees violated the policy and that activity on the Micros card of an employee terminated in 2007 appears on the February 2008 report (which shows a trend of employees logging in to the Micros systems with cards not their own), a jury could reasonably infer that SSP's actual motivation for terminating Hicks was not the policy violation reason it articulated. SSP otherwise tolerated, and seemingly encouraged, Micros card use that was inconsistent with the policy under which Hicks was purportedly terminated. For these reasons, and drawing inferences in her favor, Hicks has provided enough evidence to survive summary judgment at the pretext stage of her claim.

Finally, there is an "additional burden on [Hicks] that [she] must prove not only that [SSP's] reason was a pretext, but that the real reason was discrimination." *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (citing *St. Mary's Honor Cntr. v. Hicks*, 509 U.S. 502, 511 (1993)). The Supreme Court in *St. Mary's*, 509 U.S. at 511 (emphasis deleted), explained further that:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.

As noted above, Hicks has put forth evidence that calls into question SSP's statement that it failed to receive notice of her filed charges. Though SSP, through its employees, has asserted that it did not receive the notice of filed charges because it was unable to retrieve any mail from its mailbox and because the key to the mailbox was lost, Hicks has offered evidence to contradict these statements. This evidence includes testimony from David that the mail key was not lost and that David himself had a key and had given a key to Barnes in February; evidence that a full mailbox would have prompted the mail carrier to bring the mail directly to the SSP restaurant; evidence that invoices and paychecks were received in the mail (which calls into doubt SSP's willingness to allow the mail to "pile up" for the period between the filing of charges and Hicks's termination); and that, even if the key had been lost, SSP had access to a spare mailbox key held by turnpike employees. Further, Hicks has put forth evidence of Barnes's and David's actual knowledge of her filing of charges, and evidence supporting an inference of Viox's knowledge of the charges. This evidence directly contradicts the declaration by Viox disavowing such knowledge. Taken together with evidence offered at the prima facie stage and in rebuttal of SSP's articulated non-discriminatory reason for terminating Hicks, we find that Hicks has provided sufficient evidence to disbelieve SSP's proffered reason, and to infer that the real reason for her termination was discrimination.

**IV.**

Hicks has not established a prima facie case of failure to promote based on race or sex discrimination.  We therefore **AFFIRM** the district court on these claims.  Hicks has made a prima facie retaliation case and has put forth evidence showing that SSP's stated reason for terminating her was pretext.  We **REVERSE** the district court's judgment on Hicks's retaliation claim and **REMAND** for further proceedings consistent with this opinion.