NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0720n.06
Filed: October 4, 2007

No. 06-6386

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **ALFRED L. FRAZIER**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **USF HOLLAND, INC.**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:    COLE and COOK, Circuit Judges; and FROST, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant Alfred L. Frazier appeals a district

court's order granting summary judgment to Defendant-Appellee USF Holland, Inc., on Frazier's

claims of race discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"); and the

Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 ("THRA"). Frazier contends that USF

Holland unlawfully terminated him (1) because of his race, and/or (2) in retaliation against a

discrimination charge Frazier filed seven years earlier. The district court concluded that USF Holland

was entitled to summary judgment because Frazier failed to establish a prima facie case for either

---

[*]The Honorable Gregory L. Frost, United States District Judge for the Southern District of Ohio, sitting by designation.

of his race discrimination or retaliation claims. The district court also concluded that even if Frazier

had made out a prima facie case of his discrimination claim, he failed to rebut USF Holland's

legitimate, nondiscriminatory reasons for discharging him. After reviewing the record and arguments

on appeal, we **AFFIRM**.

## I. BACKGROUND

USF Holland is a national freight delivery trucking company, employing approximately

10,000 employees and operating approximately seventy terminals. Frazier, who is Black, first applied

for employment as a truck driver at USF Holland's Knoxville terminal in 1994. This application

proved fruitless, and in 1997 Frazier filed a complaint against USF Holland with the Tennessee

Human Rights Commission ("THRC") and the Equal Employment Opportunity Commission

("EEOC"), alleging that USF Holland failed to hire him because of his race. Frazier ultimately

decided not to pursue these charges.

Frazier again applied for work as a truck driver with USF Holland's Knoxville terminal in

2004. This time Frazier was hired as a "casual," as opposed to a "regular," employee. Casual

employees are called to work on an as-needed basis during busy times and to fill a temporary

vacancy when, for instance, a regular employee calls in sick or takes a vacation. "Driver casuals"

drive trucks, work on the loading dock, and, unlike the "part-time casuals," who do dock work only,

are not limited to six-hour shifts. A casual employee who performs well and meets USF Holland's

job qualifications may become eligible for hire as a regular employee, as regular-employee positions

open, and begin a thirty- to sixty-day probationary period. USF Holland utilizes the casual-employee

period and regular-employee probationary period to determine whether a potential hire is suited for

the job.

USF Holland called Frazier to work as a driver casual eleven times between May 28, 2004, and June 23, 2004. During these eleven days, Frazier split time between city-driving and dock-working duties. USF Holland did not call Frazier to work after June 23, and, on July 16, the company officially terminated Frazier. USF Holland maintains that Frazier's performance was inadequate and that he did not possess the requisite skills necessary to do either job. The terminal manager testified that Frazier took too long to make deliveries, frequently got lost when doing so, and had trouble operating the fork lift and locating freight on the dock. Frazier asserts that he performed satisfactorily, but was treated differently because of his race and/or in retaliation against his complaint filed against USF Holland in 1997.

On September 9, 2004, Frazier filed discrimination and retaliation charges with the THRC and the EEOC. These charges were predicated on the events that transpired between May 28, 2004, and June 2004, only. After finding that the record did not support either charge, the EEOC issued Frazier a right-to-sue letter on March 10, 2005. Frazier timely brought the instant action in federal district court, alleging that USF Holland (1) discharged him because of his race, and (2) retaliated against him for previously filing a discrimination charge with the THRC and the EEOC in 1997, both in violation of Title VII, § 1981, and the THRA. The district court granted USF Holland's motion for summary judgment, concluding that Frazier failed to demonstrate a prima facie case for either race discrimination or retaliation, and that even if Frazier had established the prima facie case, he nevertheless failed to establish that USF Holland's reasons for its decision to stop calling him to work were merely a pretext for discrimination. *Frazier v. USF Holland, Inc.*, No. 3:05-CV-230, slip

op. at 21–22 (E.D. Tenn. Oct. 17, 2006).

Frazier timely appealed.

## II. ANALYSIS

Frazier's discrimination and retaliation claims under § 1981 and the THRA are governed by the same legal framework as his claims under Title VII. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). Accordingly, the analysis of his discrimination and retaliation claims under Title VII apply equally to the parallel claims under § 1981 and THRA. *Id.*

We review de novo the district court's grant of summary judgment on all claims in favor of USF Holland. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## A.     Discrimination Claim

Title VII forbids employers from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). At the summary-judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on a Title VII race-discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Frazier has not presented any direct evidence of discrimination; rather, he contends circumstantial evidence supports

his claim.

Under the circumstantial-evidence approach, a plaintiff must first establish a prima facie case by creating an inference of discrimination under the familiar *McDonnell Douglas* /*Burdine* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000). To establish a prima facie case of race discrimination, Frazier must demonstrate that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was treated differently than similarly-situated, non-protected employees. *DiCarlo*, 358 F.3d at 415. "After a plaintiff creates a presumption of discrimination by establishing a *prima facie* case, a defendant may rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision." *Dews*, 231 F.3d at 1021. If the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual. *Id.* Throughout this burden-shifting process, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *DiCarlo*, 358 F.3d at 415 (internal citation omitted).

USF Holland concedes the first three prongs of Fraizer's prima facie case. The parties dispute, however, whether Frazier established that he was treated differently than similarly situated employees who are not in his protected class. In support of his claim that he was treated differently because of his race, Frazier argues that (1) he did not receive the same on-the-job training as non-minority casual employees; (2) he was assigned to drive old, unsafe trucks, while non-minority causal employees were given better trucks; and (3) he was terminated, while Earl Deever, a non-

minority casual employee, was retained.

Certainly Frazier's claims of unequal training, unequal truck assignment, and termination, if true, constitute "different treatment." The question then is whether Frazier has established a genuine issue of fact that these other employees who allegedly received more favorable treatment were non-minorities and similarly situated to Frazier. A "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* With this standard in mind, we address the three alleged instances of unequal treatment in turn.

### 1. Unequal Training

Frazier claims that he did not receive the same on-the-job training as non-minority employees working alongside him on the dock. Frazier, however, has presented no evidence that these other employees either had the same position as Fraizer (driver casual), or claimed to have the same extensive work experience as Frazier, both being relevant aspects of receiving additional training. In deposition testimony, Frazier simply refers to these employees as "new faces" he saw on the dock and relies on this description to create an inference that they must have been casual employees like Frazier. Although it is reasonable to infer, based on Frazier's "new faces" testimony, that these

employees were likely recent hires, Fraizer's comment alone is insufficient to create a factual issue for the jury that those "new faces" were similarly situated in all relevant respects to Frazier. *Ercegovich*, 154 F.3d at 352.

For instance, Frazier has not established that these "new faces" were hired as casual, as opposed to regular, employees. Because casual employees are hired to be called on an as-needed basis, due to additional work or to supplement a specific position, it is reasonable for USF Holland to devote different or additional training to newly hired regular employees. Moreover, on the employment application that Frazier submitted to USF Holland, Frazier stated that he had nearly thirty years of dock and platform-related experience. Frazier did not put forward evidence that any of the "new faces" had similar, extensive dock experience, and yet still received additional training. Frazier counters that USF Holland had a practice of not hiring inexperienced dockworkers and, therefore, these "new faces" would not require training different from Frazier. Although there is no dispute that USF Holland's practice is to hire only casual workers with some dock experience, this still does not establish that these "new faces" had anywhere near the thirty years of dock and platform-related experience that Frazier represented he had. Frazier, who maintains the burden of proof, falls short of establishing that these unidentified employees, even assuming they were casuals, were similarly situated to him "in all of the relevant respects," because he has not presented any evidence regarding their prior experience or tenure with USF Holland. Therefore, we conclude that Frazier has not established a genuine issue of material fact relating to his unequal training allegations.

**2.      Unequal Truck Assignment**

Next, Frazier contends that he was repeatedly assigned to drive old, unsafe delivery trucks, while non-minority drivers were assigned to newer, more desirable trucks. At deposition, Frazier testified that

> [t]he guys that would come in after I would get an assignment, these guys would get good trucks. I would get the truck that was dangerous, something they pulled out of what they called quote, unquote, "graveyard type deal." . . . [I]t's a nickname where they bring out a truck that's absolutely unroadworthy.

(JA 486.) Frazier testified that Eddie Allen, who was responsible for truck assignments, would tease Frazier by saying, "Here [Frazier], here's your assignment for the day. I've got something special for you." (JA 487.) Frazier testified that a USF Holland mechanic expressed concern about the roadworthiness of a truck assigned to Frazier, and that, of the "six or seven white" casuals in his group, he would always "get[] the crappy truck." (JA 488.)

Frazier's testimony, taken in a light most favorable to Frazier, does not establish that these non-minority casual drivers were similarly situated to Frazier in all relevant respects. It is undisputed that USF Holland assigns trucks based on seniority and route distance. As USF Holland points out, Frazier has not put forward any evidence establishing that these non-minority casual drivers shared the same seniority as Frazier or that they drove similar routes. Indeed, Frazier admitted at deposition that he did not know the hire date of these "six or seven white casuals [who] would get better trucks," nor did he "know anything about the runs that they were delivering to." (JA 492–93.) Further, Eddie Allen testified that although Frazier may have received the oldest truck during his eleven working days, it was because he "generally had the shortest runs in the city." (JA 256.) Thus, Frazier has not established a genuine issue of fact that other non-minority similarly situated casual

employees received better truck assignments.

### 3.     Retention of Earl Deever

Finally, Frazier contends that he was treated differently from Earl Deever, a non-minority casual employee whom USF Holland allegedly retained after ceasing to call Frazier. Frazier's evidence that Deever was similarly situated to him consists exclusively of Frazier's own deposition testimony identifying Deever only as a white casual employee. Frazier has failed to establish that Deever was similarly situated to Frazier in all relevant respects: Fraizer does not indicate how long Deever had been employed as a casual employee, Deever's level of performance while employed at USF Holland, or Deever's relevant past experience. We conclude, therefore, that Fraizer has not established a genuine issue of material fact based on the retainment of Earl Deever.

In sum, Frazier's generalized and vague allegations that other non-minority casual employees were treated better than he was is not enough to make out a prima facie showing that he was denied further employment because of his race. We therefore affirm the entry of summary judgement on his race discrimination claims.

### B.     Retaliation Claim

Frazier also alleges that USF Holland discharged him in retaliation for the discrimination charge he filed against USF Holland in 1997. To establish a prima facie case of retaliation under Title VII, a plaintiff must establish that (1) he engaged in activity protected by Title VII, (2) the exercise of his civil rights was known to the defendant, (3) the defendant took an adverse employment action against the plaintiff, and (4) the adverse employment action was causally connected to the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

USF Holland challenges only the second and fourth prongs.

### 1. USF Holland's Knowledge of Frazier's Protected Activity

The decisionmaker's knowledge of the protected activity is an essential element of the prima facie case of unlawful retaliation. *See Muhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002). USF Holland contends that the management personnel charged with the decision to discontinue Frazier's employment lacked any knowledge of Frazier's seven-year-old discrimination claim. Indeed, the relevant affidavits and deposition testimony of USF Holland's Knoxville Terminal supervisors all indicate that they were unaware that Frazier had previously filed a charge of discrimination against USF Holland. Frank Rose ("Rose"), the manager responsible for terminating Frazier, was not even employed by USF Holland in 1997.

Nonetheless, Frazier argues that the "only logical explanation" for his termination is that Rose made the adverse decision based upon information reported to him by other employees who did have knowledge of Frazier's 1997 discrimination charge. This, says Frazier, is the only way to reconcile USF Holland's "inconsistent" actions of hiring him as a casual employee and then "abruptly" terminating him. Frazier has failed to produce any evidence, direct or circumstantial, to support his contention that Rose, indeed, had been informed of Frazier's 1997 activity. To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions. *Muhall*, 287 F.3d at 552 (holding that plaintiff failed to establish knowledge on the part of the decisionmaker where plaintiff did not produce any evidence, direct or circumstantial, to rebut evidence that decisionmaker had no knowledge and plaintiff offered "only conspiratorial theories, not the specific facts required under the Federal Rule of Civil Procedure 56" (citing *Visser v. Packer*

*Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc) (holding that summary judgment was appropriate where the inferences plaintiff sought to draw from evidence were akin to "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from [personal] experience"))). Thus, the district court correctly concluded that Frazier failed to establish the "knowledge prong" of the prima facie case.

### 2.      Causation

Frazier also fails to demonstrate a causal connection between his 1997 discrimination charge and USF Holland's decision to stop calling Frazier for work in 2004. To establish the requisite causal connection, a plaintiff must "'proffer evidence sufficient to raise the inference that [his or] her protected activity was the likely reason for the adverse action.'" *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quoting *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (internal quotations and citations omitted). The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity. *Avery*, 104 F.3d at 861. "Proof of temporal proximity between the protected activity and the adverse employment action, 'coupled with other indicia of retaliatory conduct,' may give rise to a finding of a causal connection." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)).

Frazier has not proffered evidence sufficient to raise an inference that his protected activity was likely the reason for his termination. He relies on his "only logical explanation" argument from above to establish a causal link between his 1997 activity and his 2004 termination. As an initial

matter, seven years had elapsed since Frazier filed the discrimination charges. Although such a gap does not necessarily destroy causation, *see Dixon*, 481 F.3d at 335 ("a mere lapse in time between the protected activity and the adverse employment action does not inevitably foreclose a finding of causality"), it does undermine such an inference. *See, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding no causal connection when, among other things, almost two years elapsed between the employee's participation in protected activity and the adverse employment decision). In any event, Frazier has not presented any "other indicia of retaliatory conduct" giving rise to a finding of a causal connection. *Dixon*, 481 F.3d at 334. Frazier has presented nothing beyond self-serving speculation and thus has failed to create an inference that his "protected activity was the likely reason for the adverse action." *Avery Dennison Corp.*, 104 F.3d at 861.

Because Fraizer failed to establish a prima facie case that he was retaliated against because of his 1997 discrimination filing, we affirm the district court's entry of summary judgment on these claims.

### III. CONCLUSION

For these reasons, we **AFFIRM** the district court's grant of summary judgment.