**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0580n.06

Case Nos. 17-4151/4166

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

<table>
<tr><td>TED BOWMAN,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>   Plaintiff-Appellant/Cross-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>CITY OF OLMSTED FALLS, et al.,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>   Defendants-Appellees/Cross-Appellants.</td><td>)</td></tr>
</table>

**FILED**

Nov 20, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: GRIFFIN and DONALD, Circuit Judges; BERTELSMAN, District Judge[*]

**BERNICE BOUIE DONALD, Circuit Judge.** For more than fifteen years, Ted Bowman has fought with the City of Olmsted over citations he received for violations of city ordinances on his property. Bowman has long argued that the City's Chief Building Official, Robert McLaughlin, selectively enforced zoning laws against Bowman, and more recently that the City impermissibly auctioned off Bowman's chattel. Various administrative bodies and courts have considered and rejected these claims. Nevertheless, Bowman persisted. He filed suit against the City and McLaughlin in the district court in 2016, alleging violations of his Fifth and Fourteenth Amendment rights. The district court dismissed Bowman's claims on summary judgment on several grounds. Now before this court are cross-appeals: Bowman appeals the summary judgment

---

[*] The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

order and the City appeals the district court's denial of the City's motion for costs and fees. For the reasons stated herein, we **AFFIRM IN PART**, **REVERSE IN PART**, and **REMAND** for a cost and fees analysis consistent with this order.

## FACTS

**Purchase of the Property.** This case arises from a long, contentious history between Bowman and McLaughlin. It was going well for Bowman between May 2001 and April 2002, the time when he purchased Permanent Parcel No. 291-10-007 (the "Property") in the City of Olmsted Falls (the "City") and the time when the City hired McLaughlin as its Chief Building Official, respectively. As the Chief Building Official, McLaughlin was tasked with inspection and enforcement of state and city zoning, land use, and construction codes in the city. He carried out his job with great vigor, apparently.

**First Citations to Bowman.** Bowman received his first citation from McLaughlin in 2002 for illegally cutting down trees and installing a driveway on the Property without submitting plans or obtaining required permits. McLaughlin felt that Bowman "was essentially using the Property as a junk yard," and continued to issue additional citations to Bowman for some extended period of time.[1] In 2006, after several citations accumulated and had been referred for prosecution, the prosecutor dismissed them "[t]o avoid the inconvenience and costs of further litigation" and so that Bowman could pursue alternative resolution.

**Variance Request.** Seeking a variance, Bowman filed an application with the Board of Zoning Appeals ("BZA") to declare his use of the property as a legal, pre-existing, non-conforming use. The BZA held a hearing and denied the application. Then Bowman appealed that decision to the City Council, which held a hearing and affirmed the BZA's order. Bowman appealed the

---

[1]Neither the record nor the briefing makes clear exactly when Bowman received the citations that formed the basis of his request for a variance.

decision further to the Cuyahoga County Court of Common Pleas, arguing that he was entitled to a zoning variance based on the historic uses of the Property and because he had been individually singled out for prosecution while other property owners faced no punishment for code violations. On July 11, 2007, the Court of Common Pleas affirmed the BZA's order and denied Bowman a variance.

**Guilty Plea.** Bowman continued to violate city ordinances through his use of the Property; and McLaughlin continued to respond in kind by issuing citations and initiating litigation. After additional cases accumulated, the parties entered into another settlement agreement in April 2016, whereby the City would dismiss all but one pending case and in exchange Bowman would plead guilty to a violation of City Ordinance 1210.03. The one case left out of the settlement agreement was pending in the Cuyahoga County Court of Common Pleas ("the Common Pleas Case"), the resolution of which now underlies Bowman's Takings Clause claim.

**Common Pleas Case and Auction.** The Common Pleas Case started on November 4, 2014, when the City filed a Verified Petition for Injunctive Relief against Bowman for open dumping and storage of inappropriate materials on the Property. On May 28, 2015, the parties executed an Agreed Judgment Entry (the "AJE") whereby Bowman agreed to remove specific materials and items from the Property within a specified timeline. If Bowman failed to satisfy his obligations, the AJE permitted the City to enter the Property and remove the items, as well as to auction off Bowman's chattel to pay for the removal. Bowman did not comply with the AJE, so the court appointed a receiver and ordered the removal and auctioning of items from the Property. The receiver conducted an auction on March 1, 2016, selling twenty-three inventoried items from the Property.

Attempting to remove the receiver, Bowman filed a motion in the Common Pleas Court. That court denied the motion, so Bowman appealed to the Eighth Appellate District Court of the County of Cuyahoga ("Eighth Appellate Court"). There, Bowman argued that "the trial court abused its discretion by ordering the asset sale," but the Eighth Appellate Court found that the trial court had the authority to appoint a receiver and provided sufficient oversight of the asset sale. Accordingly, the Eighth Appellate Court affirmed the decision of the trial court to "authoriz[e] a receiver to sell at auction certain chattel owned by Bowman that was the subject of a nuisance action."

**District Court Case.** Bowman filed suit in the district court on August 19, 2016, naming the City and McLaughlin as defendants,[2] and alleging that they violated his Fifth and Fourteenth Amendment rights by selectively enforcing laws against him, and taking his property without just compensation, respectively.[3] Following discovery, which included depositions of both Bowman and McLaughlin, the City filed for summary judgment. The district court granted that motion, finding that Bowman is collaterally estopped from raising both of his extant claims, that he did not satisfy "at least" the first element of his selective enforcement claim, and that he had waived his takings clause claim by entering into the AJE. Bowman now timely appeals that order.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). To succeed on summary judgment, the movant must show she is entitled to judgment as a matter of law by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

---

[2]Bowman named two other defendants that were dismissed prior to entry of the summary judgment order.

[3]Bowman also asserted a breach of fiduciary duty claim that was dismissed prior to the entry of the summary judgment order.

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). To avoid entry of judgment, the nonmovant "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis added). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphases in original).

## ANALYSIS

### I.

We address first the district court's finding that Bowman failed to offer proof creating a genuine issue as to "at least" the first element of his selective enforcement claim. We agree with the district court.

A selective enforcement claim—which arises under the Equal Protection clause of the Fourteenth Amendment—prohibits government actors from selectively enforcing the laws with discriminatory purpose and effect. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). It carries the following three elements:

> First, an official must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, the official must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Id.* at 319 (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir.1991)) (brackets removed). Bowman failed to introduce any proof in response to Defendants' motion for summary judgment that created a *genuine* issue as to at least the first element.

To establish the first element, "it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside her category were not prosecuted." *Gardenhire*, 205 F.3d at 319 (quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir.1997)). Bowman, who is a white male, alleged in his complaint that he was treated differently than eight other property owners; however, Bowman admitted in his deposition that each of those different property owners are also white males or white couples. There is no proof that any similarly situated persons "outside [Bowman's] category" were not prosecuted. Accordingly, Bowman has not satisfied the first element of his claim.

In response to these facts, Bowman argues that he composes a "class of one" for purposes of equal protection, pursuant to *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In *Olech*, the Supreme Court found that a plaintiff pled a claim for selective enforcement—although that plaintiff did not allege membership in a class or group—because the village's demands of her as an individual were "irrational and wholly arbitrary." *Olech*, 528 U.S. at 565 (creating "class of one" designation for equal protection claims). Bowman, though, does not qualify as a "class of one."

In a "class of one" case, the plaintiff must demonstrate that 1) there is no rational basis for her treatment and 2) that she has been intentionally treated differently from others similarly situated. *See Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 549 (6th Cir. 2007) (quoting *Olech*, 528 U.S. at 564). Bowman has done neither. First, Defendants' actions cannot be characterized as "irrational and wholly arbitrary," especially by Bowman, who entered a guilty plea and *admitted* to having violated a city zoning ordinance (in exchange, the City dropped several other pending cases against Bowman that may have resulted in convictions). Second, Bowman has not provided any proof of discriminatory intent. During his deposition, he

admitted that he had no evidence of discriminatory intent, and that the theories he proffered in the lawsuit amounted to "speculation on [his] part." "To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions." *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002)). Bowman has *only* put forward speculation and intuition as his purported proof of McLaughlin and the City's purpose. For this reason, he fails to demonstrate not only a "class of one" designation, but also the second element of his selective enforcement claim (discriminatory purpose). His claim for selective enforcement does not survive summary judgment.

## II.

We now turn to the district court's order collaterally estopping Bowman from pursuing his Takings Clause claim. Under the doctrine of collateral estoppel (or issue preclusion), a party is "precluded from relitigating facts resolved adversely to them in a prior equitable proceeding." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Here, we apply Ohio's collateral estoppel law because that is where the prior judgment was entered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). In Ohio, the party asserting collateral estoppel must demonstrate the following elements:

> (1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;
>
> (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
>
> (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and
>
> (4) The issue must have been identical to the issue involved in the prior suit.

*Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App. 3d 179, 180–81 (Ohio Ct. App. 1984). When a party successfully demonstrates these elements, their adversary is precluded from litigating the previously-decided issue (e.g., the adversary is "collaterally estopped" from requesting a different ruling on those issues in the subsequent forum).

The district court ruled that Bowman is collaterally estopped from raising his Takings Clause claim because he asserted and lost on the same underlying issues when he requested the receiver be removed. We agree.

As an initial matter, the parties disagree about the extent of Bowman's Takings Clause claim(s): Bowman contends that he made two claims, one for the improper sale of his chattel (a physical taking) and one for the decrease in the value of his real property (a regulatory taking); whereas the City argues that Bowman is confined to the alleged regulatory taking claim. The City is correct. In his complaint, Bowman alleges that he "has been damaged by the failure [of the City] to pay just compensation for the loss of his *chattel*." (emphasis added). He only references property values in two other paragraphs, each of which is directed towards the chattel sold from his lot—not his real property. If Bowman intended to make a regulatory taking claim for an alleged loss of value to his real property, he would have had to file a motion to amend pursuant to Fed. R. Civ. P. 15(a). He did not. Because permitting Bowman to assert a new claim at the summary judgment stage "would subject defendants to unfair surprise," *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005), he is limited to the physical takings claim he alleged in his pleadings.

Accordingly, the collateral estoppel question before this court is as follows: Did the City obtain a final judgment against Bowman wherein a court of competent jurisdiction necessarily and actually decided that the auction of Bowman's property was permissible? The answer is yes.

First, the issues between the two cases are identical. As the district court correctly noted, the gravamen of Bowman's current claim is that the receiver exceeded his authority in various ways, causing his chattel to fetch less than its real value at auction. Identically, in the previous litigation against the City, Bowman requested removal of the receiver because, according to Bowman, the receiver's "administration of the receivership property plainly has resulted and continues to result in waste contrary to the Court's mandate that the best possible price be obtained for such chattel."

Second, the court issued a final judgment: the trial court denied Bowman's motion and the appellate court affirmed the trial court's order (there is no indication that any further appeals are permissible or pending).

Third, the relevant issues were essential to the final judgment as Bowman's request relied solely on adjudication of the receiver's authority and the court's supervision of the auction. Indeed, the appellate court affirmed the trial court's decision after concluding that the receiver had acted within his authority and that the "trial court properly supervise[d] the receiver and provide[d] oversight for the sale."

Bowman had his day in court on these questions. *See Goodson,* 2 Ohio St.3d at 200–01 ("The main legal thread which runs throughout the determination of the applicability of *res judicata* . . . is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense."). The district court properly found that Bowman is collaterally estopped from asserting his Takings Clause claim.

**ATTORNEY'S FEES**

After the district court entered judgment in Defendants' favor, Defendants filed a motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54. The district

court denied the motion, entering a text order with only the following sentence: "The Court cannot say that the action was frivolous, unreasonable, or without foundation." Defendants now appeal that order. Because the district court provided insufficient analysis from which we can evaluate whether the order was an abuse of discretion, *Hensley v. Eckerhart*, 461 U.S. 424, 452 (1983) (applying abuse of discretion standard to denial of attorney's fees under § 1988), we remand for a cost and fees analysis consistent with this order. *See Fisher v. City of Detroit*, 4 F.3d 993 (6th Cir. 1993) (remanding, in part, because the district court provided "no analysis").

## CONCLUSION

For the reasons set forth above, we **AFFIRM IN PART**, **REVERSE IN PART**, and **REMAND** for a cost and fees analysis consistent with this order.