NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0242n.06

No. 18-3665

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 07, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JEROME BARROW, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CITY OF CLEVELAND, et al., | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: KETHLEDGE, WHITE, and BUSH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff Jerome Barrow, a former lieutenant with the Cleveland Division of Police, brought this action against the City of Cleveland and several of his former supervisors[1] alleging that they retaliated against him for filing a charge of racial discrimination with the Equal Employment Opportunity Commission (EEOC). After a jury returned a verdict in Barrow's favor, the district court denied the City's motion for judgment as a matter of law, granted Barrow's motion for attorneys' fees, and entered judgment for Barrow. The City now asks us to set aside the jury's verdict, grant it judgment as matter of law, and grant its motion for fees. Finding no error, we affirm.

---

[1] The district court granted the individual defendants' Rule 50(a) motion for judgment as a matter of law at the close of Barrow's case-in-chief.

**I.**

A.      **Factual History**

Jerome Barrow, an African-American male, began his long career with the City of Cleveland Division of Police in 1979.  By all accounts, Barrow was a good officer; he received high marks on his annual performance evaluations, was certified as an instructor in 1985, and rose through the ranks.  In 1993, he was promoted after passing the promotional exam for sergeant. Barrow achieved the rank of lieutenant in 2005, and later joined the vice unit, where he spent most of the rest of his career.  Barrow received multiple commendations from his supervisors over the years and he was chosen to represent the City of Cleveland in the security detail for President Obama's 2009 and 2013 Inaugurations.

Barrow took the test to become a captain in 2011, but failed to achieve a passing score.  Of the officers who took the exam, eight passed and two (including Barrow) failed.  Only one of the officers who passed was African-American.  After learning of the test results, Barrow filed a charge with the EEOC in February 2012 alleging that the test was racially discriminatory.  The EEOC notified the City of Barrow's complaint.  The EEOC conducted an investigation and ultimately issued a notice of right to sue.

Following his EEOC charge, Barrow experienced several employment actions that he claims were in retaliation for his EEOC complaint.

First, Barrow alleges that the City retaliated against him by reassigning the 2010 Dodge Charger that had been dedicated to his use as the vice-unit supervisor.  According to Barrow, every vice-unit officer has a vehicle assigned to him or her.  Barrow's Charger sustained damage in January 2012 when Barrow collided with a "boulder" in the road.  (R. 66, PID 1176.)  The car was removed from service while it was repaired, and Barrow drove the department's "pool cars," which were available for use by all vice officers.  (*Id*. at PID 1177–78.)  When the Charger was put back

into service in September 2012, Captain Romoga, Barrow's immediate supervisor, reassigned the vehicle and expressly prohibited Barrow from using it. When he was transferred from the Third District (and thus no longer under the command of Romoga and Stephens), the Charger was assigned to Barrow's successor.

Second, Barrow asserts that he was put on administrative duty in retaliation for his EEOC complaint. On October 31, 2012, then-Deputy Chief Calvin Williams issued an order prohibiting Barrow from having any contact with the public. The order was conveyed to Barrow by Commander Stephens, the commanding officer of the Third District. Although Barrow remained a part of vice squad, he was "removed from any actual duties of the vice unit." (R. 66, PID 1155.) Instead, his work would be "purely administrative." (R. 46-2, PID 695.) Barrow was deeply frustrated by this reassignment; he explained at trial that for almost all of his career, he worked the shift that ran from 7:00 p.m. to 3:00 a.m., what he called "high crime hours." (R. 65, PID 1085.) These were the standard hours for the vice squad, and Barrow considered himself "a vice guy." (*Id*. at 1085–86.) Barrow was finally taken off administrative duty and returned to street duty upon his transfer from the Third District to the Fourth District on April 1, 2013.

Third, Barrow contends that he was barred from seeking certain overtime opportunities after his EEOC complaint. Specifically, he asserts that as a result of Williams's no-contact-with-the-public order, he was effectively prohibited from working security details during Cleveland Browns football games. According to Barrow, these security details required four officers, but often only two or three officers volunteered. Barrow alleges that he was unable to fill the empty spots in that detail because he was prohibited from having any contact with the public.

Barrow filed a second charge with the EEOC on December 4, 2012, alleging retaliation for his filing of the first EEOC charge. The EEOC issued a right-to-sue notice regarding the second

charge on January 13, 2016. Barrow retired from the Cleveland Division of Police on July 26, 2016.

## II.     Procedural History

On April 18, 2016, Barrow filed his complaint, naming as defendants the City of Cleveland, Patrick Stephens, Michael McGrath, and Martin Flask.[2] Barrow's claims included: (1) racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983; (2) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*; (3) discrimination under Title VII; (4) First Amendment retaliation in violation of § 1983; (5) retaliation in violation of Ohio Revised Code § 4112.02; and (6) "pendent state law claims." Barrow also sought punitive damages. Neither party filed dispositive motions, and the case proceeded to trial.

The morning of trial, the district court dismissed Barrow's § 1983 claims and Title VII discrimination claim on the ground that all alleged acts of discrimination took place outside the two-year statute of limitations, and therefore the claims were time-barred. Only the Title VII and state-law retaliation claims remained for trial.

At the close of Barrow's case-in-chief, the City moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The district court granted the Rule 50 motion as to the three individual defendants, ruling that they were protected by qualified immunity. The district court noted that no evidence had been presented that the individual defendants personally engaged in any form of retaliation or that they were actually aware that Barrow had filed the first EEOC complaint. The district court took the motion under advisement as to the City.

---

[2] During the relevant time period, Stephens was Barrow's district commander, McGrath was Chief of Police, and Flask was the Director of Safety.

After the defense presented its case, the City renewed its motion for judgment as a matter of law. The district court reserved ruling on the motion and submitted the case to the jury. The jury returned a verdict in Barrow's favor and awarded him $55,900 in compensatory damages.

Barrow then filed a motion for attorneys' fees and costs. Barrow sought only the lodestar amount for his counsel's work: the reasonable hours worked multiplied by a reasonable hourly rate. In total, Barrow requested $107,569.53 in attorneys' fees and $4,266.15 in costs.

Defendants Stephens, Flask, and McGrath also filed a motion for attorneys' fees. Defendants argued that because the district court granted the Rule 50(a) motion at the close of Barrow's case-in-chief, the individual defendants were prevailing parties in the action and entitled to attorneys' fees. According to the individual defendants, they incurred fees and costs "investigating and defending, and eventually being forced to try a case and defend multiple claims against multiple parties that had no evidentiary support whatsoever." (R. 72, PID 1528.)

The magistrate judge issued a report and recommendation that Barrow's motion for fees be granted and Defendants' motion be denied, which the district court adopted. The district court noted that Barrow's counsel billed for only 139 hours over the course of the three-year case, while counsel for Defendants billed for 533 hours of attorney time. Because it appeared Plaintiff's counsel was more efficient, the district court credited his business judgment in billing his time. The district court also found, over Defendants' objection, that the individual Defendants were not entitled to attorneys' fees and costs because the allegedly frivolous claims were so intertwined with the successful claim as to preclude an award.

The City also filed a written motion to amend the judgment under Rule 50(b), or in the alternative, for a new trial under Rule 59(e). The City argued that: (1) Barrow failed to allege that he was put on administrative duty in his second EEOC charge, and therefore the claim was not

administratively exhausted; (2) Barrow failed to present evidence that any decision-maker had knowledge of the first EEOC charge prior to the alleged acts of retaliation; (3) Barrow failed to prove that any of the alleged retaliatory acts were materially adverse; (4) Barrow failed to prove a causal connection between the filing of the first EEOC charge and the adverse acts; and (5) Barrow failed to sufficiently prove his damages. The City also argued that the jury was prejudiced by Barrow's testimony during his case-in-chief because he made "widespread allegations which had no evidentiary support and were not included in the EEOC [c]harge, making them irrelevant to any pending claim." (R. 75, PID 1618–19.)

The district court denied the City's motion, explaining:

> Competent evidence was presented at trial by which the Jury reasonably found that a City employee with managerial authority was aware that Plaintiff filed his EEOC charge in April 2012 and that retaliatory action was taken against Plaintiff after filing his EEOC charge. Finally, there was evidence to support the jury finding of causation and to support its relatively modest award of compensatory damages. The Jury considered all of the evidence in this case and returned a verdict consistent with the law and the agreed upon jury instructions. Accordingly, the City's Motion for Judgment as a Matter of Law is denied.

(R. 88, PID 1727.) The district court also denied the City's motion for a new trial on the ground that even if the jury heard evidence related to the three individual defendants in Barrow's case-in-chief, the City suffered no prejudice because the same evidence would have been used to support Barrow's claim against the City.

The City now appeals.

## II.

We review de novo a district court's decision to deny a renewed motion for judgment as a matter of law under Rule 50(b), and reverse the denial "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Equal Emp't*

*Opportunity Comm'n v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (citation omitted). In conducting this review, "we may not weigh the evidence, pass on the credibility of witnesses, or substitute our judgment for that of the jury." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010) (citation omitted).

The City offers three primary arguments on appeal. First, the City asserts that the district court erred in allowing Barrow to testify regarding his five-month reassignment to administrative duty because Barrow did not include this allegation in his EEOC charge. Second, the City contends that Barrow failed to make a prima facie case of retaliation under Title VII. Third, the City argues that Barrow's claim for damages was unsupported by sufficient evidence.

A.      Exhaustion

The City argues that the district court should have prohibited Barrow from testifying about his transfer to administrative duty because Barrow did not make this specific claim in his December 4, 2012 EEOC complaint. According to the City, Barrow has thus failed to exhaust his administrative remedies.

An employee alleging discrimination or retaliation in violation of Title VII must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act. *See* 42 U.S.C. § 2000e-5(e)(1). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Broadly speaking, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citations omitted). However, because aggrieved employees typically file charges with the EEOC pro se, their complaints are construed liberally "so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. at 362. "[T]he general

rule in this circuit [is] that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citation omitted).

Here, Barrow's administrative-duty claim is reasonably related to the factual allegations in the EEOC charge and therefore he has properly exhausted his administrative remedies. Barrow's second EEOC charge states:

> I was employed by the above named Respondent [the City of Cleveland] on or about October 26, 1979, as a Patrol Officer and most recently held the position of Lieutenant. On February 22, 2012, I filed a charge of discrimination with the EEOC against the named Respondent (Charge No. 532-2012-00957).
>
> Since filing a charge of discrimination with the above named Respondent; I have been subject to multiple instances of unwarranted harassment, intimidation, denied over time, the taking away of my assigned work vehicle and the involuntary transfer / reassignment to A platoon (uniform duty) by Capt. Romoga.
>
> I believe that I was discriminated against in retaliation for having filed a previous charge of discrimination with the EEOC against the above named Respondent in violation of Title VII of [the] Civil Rights Act of 1964, as amended (Title VII).

(EEOC Charge, App. R. 30.) The City is correct that Barrow's EEOC complaint does not specifically identify his assignment to administrative duty as a material adverse action. Rather, the EEOC complaint states that Barrow was reassigned to uniformed duty (Platoon A), which, the City argues, is technically different from an assignment to administrative duty. Even so, the factual allegations in the Platoon-A claim are similar to the administrative-duty claim advanced at trial; in both claims, Barrow asserts that he was reassigned to a less-desirable shift in retaliation for alleging racial discrimination by the Cleveland Division of Police. The allegations in Barrow's EEOC charge would have prompted the EEOC to investigate any administrative transfers of Barrow during the relevant time period. Therefore the two claims are "reasonably related" for our purposes. *See Younis*, 610 F.3d at 362 ("when facts related with respect to the charged claim

would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim"). The district court did not err by allowing the introduction of evidence related to Barrow's transfer to administrative duty.

### B.  Proving Title VII Retaliation

The City asserts it is entitled to judgment as a matter of law because Barrow failed to prove a prima facie case of retaliation under Title VII. A Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)). When a plaintiff supports his claim with circumstantial evidence, we examine the retaliation claim under the same *McDonnell Douglas* evidentiary framework that is used to assess claims of discrimination. *Imwalle*, 515 F.3d at 544 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). A plaintiff establishes a prima facie by showing that: (1) he engaged in a protected activity; (2) his exercise of the protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the adverse action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster*, 746 F.3d at 730). The final element requires proof of "but-for" causation, meaning that the plaintiff must furnish evidence that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The burden then shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its actions. *Imwalle*, 515 F.3d at 544. "If the defendant satisfies this burden, the plaintiff must

then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was pretext designed to mask retaliation." *Id*.

However, a defendant appealing a jury verdict in a Title VII case may not rely on the argument that the plaintiff failed to prove a prima facie case. "Following a trial on the merits, the district court . . . cannot return to a consideration of whether plaintiff has proven its prima facie case. This is a preliminary matter which cannot be revisited at a later time." *Equal Emp't Opportunity Comm'n v. Avery Dennison Corp*., 104 F.3d 858, 861 (6th Cir. 1997). In *Imwalle*, we explained that the court's duty after a trial on the merits is to "determine the ultimate question"; in this case, whether Barrow produced sufficient evidence to support the jury's finding that the City took materially adverse action in retaliation for his EEOC complaint. *Imwalle*, 515 F.3d at 545–46. "In reaching [the] determination on the ultimate question of retaliation, [this court] may review all of the evidence in the record, including the evidence supporting [Barrow's] prima facie case." *Imwalle*, 515 F.3d at 546 (citation and internal quotation marks omitted).

The City does not dispute that the filing of an EEOC charge is protected activity, but it contends that Barrow failed to produce evidence showing that the defendants knew of the EEOC charge, that the City took an adverse action against Barrow, or that a causal connection existed between the protected activity and any adverse action. We address each contention in turn.

1. *Knowledge*

A plaintiff alleging retaliation under Title VII must establish that the defendant knew about the plaintiff's exercise of the protected activity. *See Rogers*, 897 F.3d at 775. We have explained that in proving the second element of a retaliation claim, "direct evidence of [the decision-maker's] knowledge or awareness is not required." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). Rather, a Title VII plaintiff must only present "sufficient evidence to support the inference that her

employer knew of her protected activity." *Id.* (discussing *Polk v. Yellow Freight System, Inc.*, 876 527, 531 (6th Cir. 1989)). We have previously inferred knowledge of protected activity in situations where the decision-maker "took an action with respect to the plaintiff, other than the challenged action, from which it could be inferred that the [decision-maker] was aware of the plaintiff's grievance." *Mulhall*, 287 F.3d at 552.

Barrow testified that he did not directly inform Stephens, Flask, or McGrath about his first EEOC charge. However, Barrow presented circumstantial evidence at trial that raises the inference that a decision-maker responsible for Barrow's discipline knew of Barrow's protected activity. Barrow filed his original charge on March 20, 2012. Barrow testified that on April 11, 2012, only three weeks after filing this charge, Barrow received a departmental memorandum that mandated that all employment complaints be sent directly to the office of public safety, rather than the human resources department. The policy stated, "Effective immediately, pursuant to the policy and procedures of the City, all public safety divisions shall forward allegations of sexual harassment, violence, and EEO claims to the director of public safety, who will then forward to the department of human resources." (R. 66, PID 1164.) Barrow testified that the new policy "meant that oftentimes you had to forward your complaint directly to the person you were complaining about." (R. 65, PID 1078.) The ultimate effect of the policy, according to Barrow, "would be to discourage you from even taking . . . action." (*Id.*) This policy was sent by Martin Flask, then the Director of Public Safety. Barrow testified that, although he "received departmental notices all the time . . . this is the first time [he] received an email of this such." (R. 65, PID 1077.) During Barrow's cross-examination, defense counsel elicited testimony that this change in policy applied to all Cleveland public safety divisions (which, in addition to police, includes fire and emergency medical services, animal control, corrections, and other related agencies), suggesting that the

policy did not target Barrow, and Barrow conceded that his name is not specifically mentioned in the policy. Nevertheless, a reasonable jury could have found that the timing and circumstances of the policy change suggested that the relevant policymakers within the City were aware of Barrow's complaint. *See Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999). Further, Barrow testified that a March 20, 2012 letter to him from the EEOC stated, "we have complied with the law and notified the employer that you filed a charge."[3] (R. 66, PID 1169.) Based on this circumstantial evidence, a jury could reasonably infer that the City was aware of his protected activity.

### 2. *Materially Adverse*

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Consequently, an employer's adverse action against a plaintiff must be "materially adverse." *Id*. at 68. This is an objective test, intended "to separate significant from trivial harms." *Id*. Materially adverse actions are not, however, "limited to [the] narrow definition of an 'adverse employment action' that includes only actions affecting the terms, conditions or status of employment." *Hawkins v. Anheuser–Busch, Inc*., 517 F.3d 321, 346 (6th Cir. 2008) (citation omitted). Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (citation and internal quotation marks omitted). "This showing is less burdensome than what a plaintiff must demonstrate for a Title VII discrimination claim." *Rogers*, 897 F.3d at 776 (citation omitted).

---

[3] The City emphasizes the date appearing on the April 24, 2012 Notice of Charge of Discrimination that the EEOC sent to the City's law department. However, the March 20 letter was also admitted into evidence.

Barrow asserts three materially adverse actions resulted from his filing the first EEOC claim: the reassignment of his preferred vehicle; his loss of overtime opportunities; and his five-month transfer to administrative duty. Because we find that his reassignment to administrative duty was materially adverse, we need not evaluate his claims regarding the vehicle and the loss of opportunities to earn overtime.

The jury heard evidence that Barrow was put on administrative duty on October 31, 2012. Defendant Stephens testified that then-Deputy Chief Williams issued the order that Barrow should not have contact with the public, and he conveyed it to Barrow. While on desk duty, Barrow worked a different shift from the rest of his unit, performing administrative tasks in the office. Barrow testified, "Took me about a half hour, maybe an hour, to complete my paperwork. And for the rest of the time I'd just sit in the office." (R. 65, PID 1093.) Barrow was further prohibited from going on any vice operations while the order was in effect. This reassignment understandably frustrated Barrow, who described himself as a "vice guy." (*Id*. at PID 1086.) The one time he went out to assist the vice unit, he was "put up on charges." (R. 66, PID 1183.) Barrow also testified that because he was on administrative duty, he was unable to assist his subordinates during a fatal shooting. This type of reassignment "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68. *See also Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 596 (6th Cir. 2007) (holding that placing employee on brief paid administrative leave and 90–day performance plan meet "relatively low bar" of materially adverse action for purpose of retaliation claim). We therefore find that the evidence was sufficient for the jury to find that Barrow's assignment to desk duty was materially adverse.

3. *Causal Connection*

Finally, Barrow must show a causal connection between the adverse actions and the filing of his first EEOC charge. *Laster*, 746 F.3d at 730–31. We generally caution against the permissibility of drawing an inference of causation from temporal proximity alone, but "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). If "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action," the employee must offer additional evidence of causation. *Id.* For example, a two-month lapse between a plaintiff's protected activity and occurrence of the materially adverse action may be sufficient to satisfy a plaintiff's prima facie case of retaliation. *Rogers*, 897 F.3d at 776–77. However, a gap of approximately four-to-five months is insufficient, without additional evidence, to imply causation. *Kuhn v. Washtenaw County*, 709 F.3d 612, 628 (6th Cir. 2013). Other evidence supporting a causal link "has commonly included evidence of additional discrimination occurring between the date at which the employer learned of the protected activity and the date of termination or other adverse employment action." *Mickey*, 516 F.3d at 526. For example, a plaintiff could show increased scrutiny of his work before he was terminated, *Hamilton v. General Electric Co.*, 556 F.3d 428, 436 (6th Cir. 2009), or that he suffered verbal threats soon after the protected action, *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). We have also found sufficient evidence of causation where the plaintiff's supervisor treated her "with exceptional harshness shortly after the initial EEOC filing," and gave the plaintiff "an

unmanageable workload." *Brown v. Lexington-Fayette Urban Cty. Gov't*, 483 F. App'x 221, 227 (6th Cir. 2012).

Barrow's first EEOC complaint was filed on March 20, 2012. The first alleged act of retaliation—the reassignment of the Dodge Charger—occurred five-and-a-half months later, on September 6, 2012. The transfer to desk duty occurred on October 31, 2012. Consistent with *Kuhn*, this period of elapsed time is insufficient to establish a causal connection without additional evidence. 709 F.3d at 628. The question then is whether the record presents additional evidence of causation.

Barrow did not present evidence of "exceptional harshness" immediately after his EEOC charge. *Brown*, 483 F. App'x at 227. Barrow did testify that Captain Romoga and Commander Stephens repeatedly attempted to transfer him to "A" Platoon, but the timing of these efforts is uncertain.

However, conspicuously absent from the trial testimony is even the suggestion of a nonretaliatory motive for the no-public-contact order and the transfer to administrative duty. Both Stephens and McGrath testified that they did not know why the no-public-contact order was given, and they did not know why Barrow was transferred to administrative duty. When asked whether no-public-contact orders are common, Director McGrath testified:

> I don't want to say common, but there is a protocol, in place when officers are under some type of criminal investigation, be it a misdemeanor investigation or a felony investigation. . . . They're assigned to restricted duty status where they would not have any public contact until there's a disposition on the criminal investigation.

(R. 67, PID 1376–77.) McGrath was then asked if he was "aware in 2012 of any criminal investigation to which Mr. Barrow was being subjected," to which he responded, "No." (*Id.* at PID 1377.) Because Barrow was not under investigation, the no-public-contact order remained unexplained. Further, Barrow testified that the no-public-contact order was lifted when he

transferred away from Romoga's and Stephens's supervision. If the no-public-contact order was necessary for public safety or due to some disciplinary infraction, one would expect that the order would remain in place without regard to which district Barrow was assigned to. Any argument that the no-public-contact order was in the service of public safety or police discipline therefore seems pretextual, and the jury could reasonably conclude that the action was so inexplicable that it was more probable than not due to retaliation.

Based on the totality of the evidence submitted, a reasonable jury could infer a causal connection between Barrow's EEOC charge and the transfer to administrative duty.

C.      Damages

Defendants argue that Barrow did not prove that he was entitled to damages because there was no evidence that Barrow was denied pay or benefits while he was on administrative duty. Barrow's only testimony of emotional distress was that he only sleeps two hours a night, which he admitted had been ongoing for "a matter of years." (R. 66, PID 1222–23.) Defendants further protest that there was no expert or medical testimony supporting this claim.

"It is well settled that Title VII plaintiffs can prove emotional injury by testimony without medical support . . . [but] damages for mental and emotional distress will not be presumed, and must be proven by competent evidence." *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) (citations and internal quotation marks omitted). "A plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." *Moorer v. Baptist Memorial Health Care Sys.*, 398 F.3d 469, 485 (6th Cir. 2005) (citation omitted).

In *Betts v. Costco Wholesale Corp.*, we discussed the evidence necessary to sustain a claim of emotional distress as a matter of law. 558 F.3d 461, 472–74 (6th Cir. 2009). The jury awarded

one of the plaintiffs $10,000 in damages to compensate her for emotional distress caused by her hostile work environment. *Id.* at 466. She testified at trial that the racism she experienced felt like "a smack in the face," and that she "felt something wasn't right," but introduced no evidence that the hostile work environment affected her physically or caused her mental or emotional anguish. *Id.* at 471–72. We held that these "generalized comments are not sufficient to support an award for emotional distress." *Id.* at 473. In contrast, we held in *Moore v. KUKA Welding Systems & Robot Corp.* that a $50,000 compensatory-damage award to a Title VII plaintiff was sufficiently proven where the "plaintiff testified that he was injured because he was 'angry' and 'upset' about the [racist] jokes and slurs and that he 'just couldn't take it any more.' Plaintiff also complained to his supervisors and started looking for a new job." 171 F.3d 1073, 1082 (6th Cir. 1999). We also noted that the $50,000 award was proportional to plaintiff's injury; he "put up with a fairly steady stream of racial jokes and slurs during his employment and "was also intentionally isolated from his coworkers in retaliation for filing an EEOC complaint." *Id.* at 1082–83.

In this case, when asked at trial what adverse impact the Defendants' conduct had on his physical and mental health, Barrow testified that he "really only sleep[s] about maybe two hours a night. Just happened to be always on edge, never having been secure in any position that I really held on the Cleveland Police Department." (R. 65, PID 1143–44.) Barrow further testified that he "had to see the police psychiatrist a number of months, but, you know, it's something that you deal with." (*Id.* at PID 1144.) And as in *Moore*, Barrow testified that he was isolated from his vice unit while he was on administrative duty.

The evidence in support of Barrow's damages claim is closer to *Moore* than to *Betts*. Rather than simply giving "generalized comments" that the complained-of conduct caused emotional harm, as in *Betts*, Barrow has pointed to specific manifestations of his emotional distress

(his lack of sleep) as well as testimony that he sought medical treatment. Barrow's testimony is therefore sufficient to support the jury's damages award.

D.        Conclusion on Rule 50(b) Motion

"[I]n reviewing the facts of a [retaliation] claim after there has been a full trial on the merits, a district court or an appellate court must focus on the ultimate question of [retaliation] rather than on whether a plaintiff made out her prima facie case." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 824–25 (6th Cir. 2000). Viewing the record in its entirety and in the light most favorable to Barrow, we find that reasonable minds could differ on the ultimate question of retaliation. Accordingly, we affirm the district court's denial of the City's Rule 50(b) motion for judgment as a matter of law.

**III.**

We review the district court's decision to deny a Rule 59(a) motion for a new trial for abuse of discretion. *New Breed Logistics*, 783 F.3d at 1065 (citation omitted). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Id.* (citation omitted). A district court may also grant a motion for a new trial under Rule 59 if it "determines that the verdict is clearly against the weight of the evidence." *Mys v. Michigan Dep't of State Police*, 886 F.3d 591, 599 (6th Cir. 2018) (citation omitted). When a party requests a new trial on the basis that the verdict is contrary to the weight of the evidence, we uphold the jury verdict unless the jury could not reasonably have reached it. *New Breed Logistics*, 783 F.3d. at 1066. We "cannot set it aside simply because we think another result is more justified." *Id.* (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc.* 763 F.3d 524, 534 (6th Cir. 2014)).

Because the City's arguments in support of its motion for a new trial are the same as those for its motion for judgment as a matter of law, the result is also the same. The jury's verdict was

neither unreasonable nor against the weight of the evidence. Thus, the district court did not abuse its discretion in denying the motion.

**IV.**

Defendants appeal the district court's grant of Barrow's motion for attorneys' fees and costs and the denial of the City's motion for fees and costs. Because of "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," we afford a substantial degree of deference to the district court's determination of fee awards, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), reviewing for abuse of discretion, *Hescott v. City of Saginaw*, 757 F.3d 518, 522 (6th Cir. 2014).

First, Defendants assert they are entitled to attorneys' fees and costs because the district court granted their Rule 50(a) motion for judgment as a matter of law at the close of Barrow's case-in-chief. They argue that Barrow's claims against the individual defendants were frivolous and therefore they are entitled to fees under *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412 (1978). Defendants note that "Barrow marshalled [sic] no evidence before or at trial in support of his claims against these three individuals," and "Barrow chose not to depose two of the individual defendants . . . [and] did not call any defendant in his case in chief." (Appellants Br. at 35–36.)

Second, Defendants argue that Barrow's award of attorneys' fees should be reduced because of the "extremely limited nature of the success at trial." (Appellants Br. at 39.) Defendants argue that the district court erred by not considering the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974), which they

contend "mitigate in favor of reducing both the hourly rate sought by Barrow as well as the number of gross hours submitted."[4] (Appellants Br. at 42.)

A.      Defendants' Motion for Fees

In *Christiansburg Garment Co.*, the Supreme Court explained that a court may award attorneys' fees to a prevailing defendant in a Title VII action under limited circumstances:

> [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

434 U.S. at 422 (emphasis omitted). In cases in which a plaintiff has raised both frivolous and non-frivolous claims, a court may award reasonable fees to the defendant "only for costs that the defendant would not have incurred but for the frivolous claims." *Fox v. Vice*, 563 U.S. 826, 829 (2011). The question then is "whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 838.

The district court correctly determined that the dismissed claims were not frivolous. The district court explained that, because Barrow prevailed on a retaliation claim that was itself based upon his reporting of racial discrimination, the factual predicates of his claims are inextricably related. In other words, Barrow's case is not one in which the plaintiff "present[ed] in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. Rather, a common core of facts gave rise to related claims for relief.

---

[4] Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Even if Defendants could show that some of Barrow's claims were frivolous, Defendants have not shown that they incurred costs as a result of those claims that they would not have incurred anyway. *See Fox*, 563 U.S. at 829. Barrow asserted the same claims against the individual Defendants and the City, and Defendants acknowledged that Barrow did not present unique facts in support of his claims against the individual Defendants. As a result, it is not clear that defense counsel expended resources defending the individual Defendants that it would not have expended defending the City.

The district court did not abuse its discretion in denying Defendants' motion for attorneys' fees.

### B.     Plaintiff's Motion for Fees

Finally, Defendants argue that the district court erred by not reducing Barrow's fee award. Defendants assert that Barrow succeeded on only one of his claims, and therefore the hours spent on the unsuccessful claims should be excluded from the fee award.

There is a "strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Once the lodestar is established, a district court retains discretion to consider other relevant factors and adjust the fee award upward or downward to achieve a reasonable result. *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (citing *Hensley*, 461 U.S. at 434). But "[w]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Imwalle*, 515 F.3d at 554 (quotation omitted). Nor should district courts "measure a plaintiff's success simply by using a ratio of successful claims to claims raised." *Waldo v. Consumers Energy Co.*,

726 F.3d 802, 822 (6th Cir. 2013) (citation omitted). We have "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed." *Id.* (quoting *Imwalle*, 515 F.3d at 554). Rather, "a reduction in attorney fees [to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Id.* (citation omitted).

There is "significant legal overlap" between claims of discrimination, harassment, and retaliation, such that a plaintiff is entitled to full fee recovery even though he or she succeeded on only some of the asserted claims. *Id.* at 823 (sexual harassment/retaliation claims); *Imwalle*, 515 F.3d at 554–56 (national-origin discrimination/retaliation); *Jordan v. City of Cleveland*, 464 F.3d 584, 603–04 (6th Cir. 2006) (racial discrimination/retaliation). Even though Barrow did not prevail in his Title VII discrimination claim and his § 1983 claims, common facts form the core of all of his claims, both successful and unsuccessful. The district court did not abuse its discretion in declining to reduce the lodestar amount based on Barrow's limited success.

**V.**

For the reasons stated above, we affirm.

**JOHN K. BUSH, Circuit Judge, dissenting.** I agree with the Majority Opinion in all respects save one: that there was sufficient evidence to support the jury's conclusion that the City employees who allegedly unlawfully retaliated against Barrow had knowledge of his EEOC complaint. After reviewing the trial record, I am unable to find any proof that would allow a reasonable jury to find "that the individuals charged with taking the adverse employment action knew of the protected activity." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) (citing *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999)). I therefore respectfully dissent from the Majority's otherwise thorough opinion.

The Majority correctly notes that direct evidence of the decision-maker's awareness of the protected activity is not required and that we may rely on circumstantial evidence to support the jury's verdict. *See* Majority Op. at 11 (quoting *Mulhall*, 287 F.3d at 552). The problem is, however, there is not even circumstantial evidence to prove any decision-maker's requisite knowledge of the EEOC complaint. Instead, the Majority can point only to circumstantial evidence that *someone* at the employer must have known of the complaint, even though there is no proof that this someone was actually involved in the allegedly adverse employment action. However, this evidence is not enough for a Title VII retaliation claim because "[u]nder the second element, [the employee's] protected activity had to be known to those who made the adverse employment decision." *See Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 513 (6th Cir. 2008) (internal quotation marks omitted) (alteration omitted).

A decision-maker's knowledge of Barrow's EEOC complaint cannot be imputed from another employee's knowledge, given that in our circuit, we do not permit a theory of liability based on imputed knowledge. *See Mulhall*, 287 F.3d at 553–54. In other words, we do not allow the assumption that once one employee has knowledge of the protected activity, it is automatically

transferred to other employees because they work for the same entity. *Id.* Instead, the plaintiff must present evidence (direct or otherwise) that an actual decision-maker knew of the protected activity. *Id.* In addition, proof of the adverse action itself is not enough to show the decision-maker's knowledge of the protected activity. *See id.* at 554.

In *Mulhall*, for example, the employee subject to the alleged adverse employment action (Mulhall) argued that there was sufficient evidence for a reasonable jury to conclude that the alleged decision-makers (Metcalfe and Ray) knew of the protected activity (i.e., that the employee had been listed as a witness in another employee's EEOC complaint). *See id.* at 551. In support, Mulhall pointed to evidence that a co-worker (Beyer) had seen Mulhall's name on the witness list and argued it could be assumed that Beyer shared that information with Metcalfe and Ray. *Id.* at 547. The record established that Beyer photocopied the witness list, but did not read it. *Id.* at 553. This court determined that there was no evidence, direct or indirect, to infer that Beyer shared this information with Metcalfe or Ray because there is no evidence in the record to support a finding that Beyer communicated with Metcalfe or Ray or would discuss this information with those individuals. *See id.* Thus, this court affirmed the district court's grant of summary judgment because "in order to reverse the district court we would have to go further and infer that Beyer shared this information with Metcalfe and/or Ray." *Id.* at 553–54. No evidence, direct or indirect, supported that finding. *See id.* at 554.

Similarly, there is no direct or indirect proof in this case that information regarding the protected activity was shared with any decision-maker. The district court concluded as a matter of law that "there is no evidence . . . in this case that would indicate that either Mr. Stephens or Mr. Flask or Mr. McGrath engaged in any form of retaliation." R. 66, PageID 1272. That leaves only Bob Romoga or Calvin Williams as possible decision-makers with respect to the alleged

adverse action. There is, however, no proof that either Romoga or Williams knew that Barrow had filed his EEOC complaint.

The Majority relies on an email memorandum from the then-Director of Public Safety Martin Flask and on Barrow's testimony about a communication he received from the EEOC as evidence the jury could rely upon to find "that the timing and circumstances of the policy change suggested that the relevant policymakers within the City were aware of Barrow's complaint." Majority Op. at 12. This evidence, however, does not show that Romoga and Williams were among the relevant "policymakers" for the policy discussed in the email memorandum. The memorandum was issued by Flask, not Romoga or Williams, and there is nothing in the email itself or otherwise in the record to suggest that Romoga and Williams had a hand in fashioning the policy.

The Majority's reliance on Barrow's testimony that the EEOC told him that "we have complied with the law and notified the employer that you filed a charge," R. 66, PageID 1169, fares no better. At most, this circumstantial evidence permits the inference that *someone* at the employer was notified of the EEOC complaint. But *Mulhall* does not allow this knowledge to be imputed to everyone at the employer. As illustrated in *Mulhall*, this circuit does not permit the inference that once one individual working for the employer receives knowledge of the protected activity, that knowledge is shared with the remaining employees. 287 F.3d at 553–54.

Having searched the record and trial exhibits submitted to this court for any evidence to support the jury's special verdict, as to decision-maker knowledge, I have found none. Indeed, when pressed for over seven minutes at oral argument regarding what evidence existed to support the jury's verdict that the relevant decision-maker knew of Barrow's EEOC complaint, Barrow

could not identify any specific evidence in the record.  *See* Oral Arg. at 18:03–25:25.  I therefore respectfully dissent.